GEORGE W. PLEASANTS, APPELLEE, V. HARRISON H. BLODGETT ET AL., APPELLANTS.

FILED MARCH 20, 1894.   No. 4284.

1. **Vendor and Vendee:** RIGHT OF OCCUPANT: NOTICE. A person buying real property in the actual possession and occupancy of another is charged with notice of any right, title, or interest which such occupant has in such property.

2. ———: QUITCLAIM DEEDS: BONA FIDE PURCHASER. One who holds real estate by virtue of a quitclaim deed from his immediate grantor, whether a purchaser or not, is not a *bona fide* purchaser in respect to outstanding and adverse equities and interests against his grantor shown by the record, or which are discoverable by the exercise of reasonable diligence in making proper examination and inquiry.

3. **Quitclaim Deeds.** One who purchases real estate and takes a quitclaim deed therefor, takes only the interest his grantor has in the property at the time of such conveyance. *Pleasants v. Blodgett*, 32 Neb., 427, followed and adhered to.

4. **Vendor and Vendee:** RECORD OF MORTGAGE. The existence of record of a mortgage on real estate is of itself sufficient to put an intending purchaser of the property on inquiry as to the interest of such mortgagor in such real estate.

5. **Statute of Limitations.** In an action to quiet title the statute of limitations does not begin to run in favor of the defendant until some assertion of ownership or claim to the premises is made by him.

REHEARING of case reported in 32 Neb., 427.

*H. H. Blodgett*, for appellants.

*Charles O. Whedon* and *Charles L. Hall, contra.*

RAGAN, C.

This is a rehearing of *Pleasants v. Blodgett*, 32 Neb., 427. The opinion there reported contains a sufficient

statement of the facts in the case.   Counsel for appellants
on the rehearing contends:

1. That they are *bona fide* purchasers for value without
notice of Pleasants' title, and strenuously insists that the
district court had not before it evidence to support its find-
ing that appellants were not *bona fide* purchasers, and that
this court was entirely wrong in affirming the decree of
the district court.   This contention of appellants has led
us to a re-examination of the entire evidence in the record.
This record contains evidence showing that on the 3d of
February, 1874, Pleasants bought the property in contro-
versy from one Boyd and paid for it by assigning to Boyd
a judgment, and for the balance of the purchase price gave
his note to Boyd, secured by a mortgage on the property;
that this mortgage was at once recorded; that at this time
the property was a vacant lot without any improvements;
that Boyd promised Pleasants to execute a deed and leave
it with one Scott for Pleasants, and afterwards told him he
had done so; Scott does not remember whether the deed
was left with him or not, but says it might have been; that
some of his papers were destroyed by fire; that Pleasants
in 1885 paid off the mortgage he had given Boyd, and in
April, 1886, paid up the taxes and took actual possession
of this lot until then vacant and unoccupied; that Boyd
left the state about 1875, having sold the Pleasants note and
mortgage; that in 1887 Blodgett was advised that in 1874
he had sold the property to Pleasants and taken a mortgage
from Pleasants; thereupon Boyd executed a second deed
for the property to Pleasants; that appellant Blodgett
claims title to this lot by virtue of a quitclaim deed from
Boyd, dated August 6, 1875, and recorded by Mr. Blodgett
eleven years and three days later; that Mr. Blodgett took
no possession of this lot; that he exercised no act of own-
ership over it; that his first assertion of ownership of the
property was the filing of his deed; that he never paid any
taxes on the lot; that he was present when Pleasants bought

the lot of Boyd; that the transaction—that is, the purchase of the lot and the giving of the mortgage—occurred in Mr. Blodgett's office. Boyd, by his deed to Blodgett, expressly quitclaimed such interest as he, Boyd, had in the property. Boyd at that time had no interest in the property and hence conveyed none. (*Hoyt v. Schuyler*, 19 Neb., 657; *Johnson v. Williams*, 37 Kan., 179.) We cannot say from this evidence that the district court erred in finding that Mr. Blodgett was not an innocent purchaser of this property.

2. So far as appellants, the Ritcheys, are concerned, they claim to have purchased this property from Mr. Blodgett, taking from him a quitclaim deed and giving him back a mortgage to secure the entire purchase money. At the time they took their quitclaim deed Pleasants was in the actual and open possession of this lot. His possession was notice to all the world of his rights and interest in the property. (*Uhl v. May*, 5 Neb., 157; *Scharman v. Scharman*, 38 Neb., 39.)

3. The next complaint of appellants is that to Pleasants' action to quiet title to this lot they set up as a defense that "Boyd and Pleasants confederated together to make a security and sale of the mortgage," and for this purpose Pleasants gave his note without consideration to Boyd for $25, secured by a mortgage on this property. This note Boyd was to pay, and as a matter of fact Pleasants never bought the lot, and that the district court, and this court as well, wrongfully refused under the evidence to so find. This was a good defense, if proved, but, in our humble opinion, the finding of the district court adversely to the contention of appellants as to this defense is supported by the evidence. The fact that there was of record a mortgage from Pleasants to Boyd on this property was sufficient of itself to warn a prudent intending purchaser thereof that Pleasants probably claimed some interest in the property. When one makes a mortgage on real estate to another the presumption, at least, is that the mortgagor is the owner of the property mortgaged.

4. The fourth complaint of appellants is that the district court in its former opinion disregarded the plea of the statute of limitations set up by appellants to appellee's action.    Counsel seems to overlook the fact that this is an action brought by appellee to quiet his title; and we are not aware of any rule of law that requires the owner of real estate to bring such an action until some one in some manner sets up or asserts some title or claim against the property, the title of which is sought to be quieted.    So far as the evidence in the record shows, the first assertion of title or ownership to the property in controversy ever made by any of the appellants was made by appellant, Mr. Blodgett, when he filed his quitclaim deed in August, 1886. If the statute of limitations is a defense to such an action as this, then the statute did not begin to run until the filing of the quitclaim deed, and was not a bar at the time this suit was begun.

5. The final contention of the appellants is that both the district court and this court ignored the statute of frauds pleaded by the defendants as a defense to the action of Pleasants.    It seems to be the opinion of the learned counsel for appellants that because a deed was not made and delivered by Boyd to Pleasants at the time of his purchase of the lot, Pleasants cannot be heard to claim title to this lot, and his only remedy is to sue Boyd for the purchase money.    But this is not an action by Boyd against Pleasants to compel him to convey the real estate mentioned.    The question here is one of equities between two parties holding deeds for the same property from the same grantor, and we confess our inability to see that the statute of frauds is applicable.    It may be that this inability on our part is unpardonable, but the fact remains that we are unable to comprehend that which to the learned counsel seems so lucid.    The former opinion of this court is adhered to.

AFFIRMED.

POST, J., not sitting.