OTTO T. BANNARD, APPELLEE, V. MARY E. DUNCAN ET AL., APPELLANTS.

FILED MAY 24, 1907. No. 14,792.

1. **Vendor and Purchaser: PRIORITIES.** A *bona fide* purchaser of real estate who takes title by quitclaim should be protected as against the holder of an unrecorded deed, of which the purchaser had no notice.

2. **Deed: INTEREST CONVEYED.** The word "quitclaim" in what purports to be a deed of conveyance to real estate is sufficient to convey the interest of the grantor therein.

3. **Evidence: FOREIGN STATUTES: PRESUMPTIONS.** In the absence of evidence to the contrary, the laws of a sister state with reference

to the creation of a corporation will be presumed to be the same
as those of this state.

4. **Lis Pendens:** JUDICIAL SALE: PURCHASER PENDENTE LITE. A took a
real estate mortgage from B, and pending an action to foreclose
the same C commenced an action in ejectment against B, and
had judgment for possession of the land. *Held,* That the pur-
chaser at the foreclosure sale was not bound or affected by the
judgment entered in the action between B and C.

APPEAL from the district court for Dakota county:
GUY T. GRAVES, JUDGE. *Affirmed.*

*W. E. Gantt,* for appellants.

*Milchrist & Scott* and *William P. Warner,* contra.

JACKSON, C.

The plaintiff had a decree quieting his title in certain
real estate. The defendants appeal.

The plaintiff's chain of title is based on a patent issued
August 20, 1869, to David Brendlinger, a quitclaim deed
from David Brendlinger to J. M. Morse and John Com-
stock, dated August 12, 1885, recorded August 15, 1885,
for a consideration of $40, a tax deed issued by the county
treasurer June 26, 1880, to Thomas L. Griffey, a quit-
claim deed from Thomas L. Griffey to John Comstock
under date of October 1, 1885, for the consideration of
$269, recorded October 9, 1885, and a warranty deed from
John Comstock and wife and James M. Morse and wife,
dated December 5, 1891, to Stephen Cain, recorded Decem-
ber 14, 1891, for the consideration of $1,200. The latter
deed appears to have been made pursuant to a contract of
sale between the parties in 1888. Cain borrowed the
money to make the payment from the Fidelity Loan &
Trust Company, and gave a mortgage for $1,200 to that
company under date of December 2, 1891, recorded De-
cember 12, 1891. This mortgage, by a series of assign-
ments, came into the possession of the Fidelity Securities
Company, and, default having been made in the perform-

ance of the conditions of the mortgage, the latter company instituted foreclosure proceedings and had a decree of foreclosure in June, 1897. The property was sold in December, 1898, to the plaintiff herein, the sale confirmed, deed issued, and recorded January 13, 1899. The defendants claim under a warranty deed from David Brendlinger executed September 24, 1870, recorded January 11, 1898.

The first contention of the appellants is that the plaintiff's petition fails to state a cause of action, for the reason that it is not charged that the plaintiff is a *bona fide* purchaser of the land in controversy. The plaintiff's petition recites the several conveyances upon which the title is based, and alleges that Stephen Cain, for a consideration of $1,200, purchased the land from John Comstock and James M. Morse, and received a conveyance with covenants of warranty, which he caused to be recorded; that the transaction was in good faith, without knowledge, either actual or constructive, of any adverse claim by the defendants or any other person or persons; relying upon the deed and the title as it appeared of record, that Cain immediately went into possession, and that such possession continued for more than ten years; that the Fidelity Loan & Trust Company took its mortgage from Cain and wife in good faith and without notice of any adverse conveyance or claim of equity existing in favor of the defendants, relying upon the title of Cain. The petition does not charge in express terms that the plaintiff purchased the property at the sheriff's sale in good faith, nor do we think it important that it should do so. The purchaser of real estate at judicial sale under the foreclosure of a mortgage buys at his peril, but he acquires all of the interest of the mortgagor and the mortgagee in the mortgaged premises. He acquires that interest as effectually as he would have done by deed from the parties, and he may protect himself under their rights. *Snowden v. Tyler*, 21 Neb. 199; *Byron Reed Co. v. Klabunde*, 76 Neb. 801. The *bona fides* of the interest in the property acquired

by Cain and the trust company appears from the petition, and the pleading is sufficient to meet that contention.

The next complaint is that the evidence is insufficient to sustain the decree. One feature of this contention arises out of the quitclaim deed from Brendlinger to Morse and Comstock, and the contention that such a conveyance is subject to all existing equities against the grantor. That rule, however, does not go to the extent claimed for it by the appellant. We have never gone to the extent of holding that a good faith purchaser might not acquire title to real estate by quitclaim as against an unrecorded, outstanding conveyance, of which the purchaser had no knowledge. In *Snowden v. Tyler, supra,* it is said that a quitclaim deed, while affording cause of suspicion, where it appears in a chain of title in the proper records of the county, is sufficient to justify a *bona fide* purchaser for a valuable consideration in relying upon it as a valid defense. It is the *bona fide* purchaser who is protected. To the same effect is *Schott v. Dosh,* 49 Neb. 187. It appears from the testimony of Cain that before he purchased the property from Morse and Comstock he procured an abstract of the title to be made by the county clerk of the county where the land is situate, found no conveyance of record affecting the title of his grantors, and that he bought the property (so far as the record discloses) for a full consideration, relying upon the record title. The outstanding tax lien at the time of the purchase by Morse and Comstock would furnish a sufficient reason why Brendlinger would not care to give a warranty deed. It is also disclosed that, before advancing the money upon the loan made to Cain, the Fidelity Loan & Trust Company procured the title to be examined by an attorney, who, finding no conveyances of record affecting Cain's title, advised that company that their mortgage constituted a first lien on the premises. This evidence is not disputed, and is sufficient to justify the trial court in concluding that Cain was a *bona fide* purchaser, and that the rights of the

mortgagee could not be affected by the unrecorded conveyance under which the defendants claim title.

The conveyance from Brendlinger to Morse and Comstock is in the following form: "Know all men by these presents, that I, David Brendlinger (single man), of the county of Indiana, and state of Pennsylvania, for the consideration of $40, hereby quitclaim to James M. Morse and John Comstock," etc. This, it is urged, is not a conveyance; that the word "quitclaim" is not sufficient to convey title. It is said in the brief on behalf of appellant that the operative words of a conveyance in a quitclaim deed are "remise, release and quitclaim." "Quitclaim" is defined by Webster as meaning in law "to release a claim to by deed, without covenants of warranty against adverse and paramount titles." Remise is defined by the same authority, "to release a claim to, remise or surrender by deed." It would appear that remise, release and quitclaim are interchangeable, and that the words of the instrument are sufficient to constitute a conveyance.

The petition charges an assignment of the mortgage to the Fidelity Loan & Trust Company, a corporation, to the Metropolitan Trust Company, a corporation organized and existing under and by virtue of the laws of New York, and an assignment by the latter company to the Fidelity Securities Company, a corporation organized and existing under and by virtue of the laws of the state of Iowa. The corporate capacity of all of these societies is denied by answer. To meet this issue the plaintiff put in evidence copies of the articles of incorporation of the Fidelity Loan & Trust Company and the Fidelity Securities Company, certified by the secretary of state of the state of Iowa, under the seal of his office. It is said that this is not sufficient, in the absence of proof of the laws of the state of Iowa under which these corporations came into existence. It is a sufficient answer to this claim that, in the absence of proof to the contrary, the laws of Iowa on this subject will be presumed to be the same as those in Nebraska, and

that the companies were incorporated under a general statute similar to our own. Our statute provides that "duly certified copies of all records and entries or papers belonging to any public office, or by authority of law filed to be kept therein, shall be evidence in all cases of equal credibility with the original records or papers so filed." Code, sec. 408. Furthermore, there is some evidence in the record of the exercise of corporate functions by these organizations. The court, therefore, violated no rule of evidence in the admission of these documents.

A stipulation in the record in effect admits the corporate capacity of the Fidelity Loan & Trust Company, the language of the stipulation being: "It is hereby stipulated and agreed between the plaintiff and the defendants in this case that on or about December 9, 1891, the Fidelity Loan & Trust Company, a corporation, loaned to Stephen Cain $1,200, and that said Cain executed and delivered to the Fidelity Loan & Trust Company his mortgage on the premises in controversy in this suit." The introduction of this stipulation in evidence was sufficient to avoid the necessity of further proof of the corporate capacity of that company. As to the Metropolitan Trust Company, proof of its corporate capacity and of an assignment from that company was immaterial. The production of the papers in court by the Fidelity Securities Company in the proceeding to foreclose its mortgage was *prima facie* evidence of ownership. *Michigan M. L. Ins. Co. v. Klatt*, 2 Neb. (Unof.) 870; *First Nat. Bank v. Sprout*, 78 Neb. 187.

Complaint is made of the introduction of the written opinion procured by the Fidelity Loan & Trust Company at the time they accepted the mortgage. If the court erred in that respect, it was without prejudice, because the written stipulation referred to contained an admission that the company did not in fact examine the records, but did inspect and examine an abstract of the records and submitted the abstract to their attorney at Sioux City, Iowa, and procured his opinion upon the state of the title. The

purpose of introducing the certificate was to show good faith on the part of the company, and it was made entirely unnecessary by the stipulation of facts.

This brings us to some of the features of the defense which it seems necessary to notice before final disposition of the case. At the time the defendants filed the deed for record, under which their claim of title is made, the foreclosure of the mortgage given by Cain to the Fidelity Loan & Trust Company was pending. Cain was in possession of the premises. The defendants herein instituted an ejectment proceeding against Cain for the recovery of the possession of the property. The plaintiff herein bought the property at judicial sale while that action was pending. In the ejectment proceeding the plaintiffs ultimately had judgment by default against Cain under an agreement to protect him in the possession of the premises for another year. It is urged that the purchaser at the judicial sale then took the title with constructive knowledge of the defendant's claim to the land; that, having bought pending the ejectment proceedings, he is bound by the doctrine of *res judicata*. The doctrine of *res judicata*, however, does not operate against the mortgagee whose rights were acquired long prior to the institution of the ejectment proceedings and who was not a party to that action, and the purchaser at the judicial sale would be protected to the same extent as the mortgagee, notwithstanding the pendency of the possessory action.

A further contention of the defendants is that they were in possession of the premises at the time of the commencement of this action, and that the plaintiff, being out of possession, cannot maintain an action to quiet his title. The right to maintain an action to quiet title to real estate in this state by the person claiming title thereto, whether in or out of possession, is no longer an open question. *Foree v. Stubbs,* 41 Neb. 271.

The plaintiff, in our judgment, has made a case sufficient to support the decree in his favor, and there is no

equity in the case presented by the defendants, who for almost 28 years neglected to assert title under an unrecorded deed. Courts of equity will apply the doctrine of laches against inexcusable delay in the enforcement of stale claims. *Hawley v. Von Lanken,* 75 Neb. 597.

From a consideration of the whole case, it is recommended that the judgment of the district court be affirmed.

DUFFIE and ALBERT, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

AFFIRMED.