IN RE APPLICATION OF WALTER A. OHMART, JR., ET AL.
WALTER A. OHMART, JR., ET AL., APPELLEES, V. S. E. DENNIS
ET AL., APPELLANTS.
196 N. W. 2d 181

Filed April 7, 1972. No. 38133.

Lyman & Meister and Howard P. Olsen, for appellant.

Van Steenberg, Winner & Brower, for appellee Ohmart.

Shino Kashiwa, Richard A. Dier, Robert Becker, Jacques B. Gelin, Larry G. Gutterridge, and V. McDonald, for appellee United States of America.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SMITH, J.

On appeal from the State Oil and Gas Conservation Commission the district court pooled interests in a 1/16th section, approximately 40 acres, of oil-producing land. The interests were held by S. E. Dennis, and his lessee, Banner Oil Company, and the United States of America, and its lessee, Walter A. Ohmart, Jr.

Dennis and Banner appeal from district court. They assert five errors: (1) The pooling order of the commission from which they appealed to district court was void in that more than the 30 days allowed by statute

had elapsed between submission and decision of the controversy; (2) an indispensable party received no notification respecting the proceeding; (3) a mineral lease from the United States to Walter A. Ohmart, Jr., without competitive bidding was void; (4) a judgment of dismissal by the district court in a prior proceeding precluded the present claim of the United States and Ohmart for compulsory pooling; and (5) the United States and Ohmart in justice and equity possessed no right to share in production prior to the date they applied to the commission in this proceeding for a pooling order.

The United States in 1924 and 1927 acquired a fee simple absolute title from William Hartley to 7.71 per cent of the land in the spacing unit for location of wells. The tract was governed by the Mineral Leasing Act for Acquired Lands, now 30 U. S. C., §§ 351 to 359 (1970). On May 24, 1963, Banner commenced drilling a well on the acreage leased from Dennis. On June 20 it reported the completion of a producing oil and gas well, Dennis No. 1, on the leasehold acreage at a depth of 5,082 feet on June 5. Production began June 6. Dennis No. 1 stopped producing in May 1970. Banner then drilled Dennis No. 2 which was producing from October 1970 at least to December 1, 1970, the date of trial in district court.

More than 30 days elapsed between submission of the controversy to the commission and the entry of the commission order. The Legislature required the commission to enter its order within 30 days after the hearing. § 57-911(6), R. R. S. 1943. The subsection also authorized the commission to act on its own motion. The Legislature provided for the appeal to the district court which was to hold a trial de novo and independently to determine issues of fact and conclusions of law. See § 57-913(1), R. R. S. 1943. The 30-day requirement is directory, a rule of practice, and not mandatory. The delay did not constitute prejudicial error.

The indispensable party is said to be Gering-Fort

Laramie Irrigation District which received a quitclaim deed, dated December 1, 1932, from Hartley and wife to approximately 1.24 acres which was to form part of the spacing unit designated by the commission in 1959 for location of wells. Dennis testified the deed related to an easement that the district had abandoned, no one having used it for the past 10 or 12 years. His petition on appeal alleged that he and Nina Dennis owned the entire 1/16th section and that he and Banner were the only owners of any oil or gas leasehold, mineral or royalty interest in the 1/16th section.

Indispensable parties to a suit are those who have such an interest in the controversy that the court cannot render a final decree without affecting their interests. See Cunningham v. Brewer, 144 Neb. 218, 16 N. W. 2d 533 (1944) (supplemental opinion). The testimony of Dennis and the nature of the deed lead us to conclude that the district was not an indispensable party. See Smith v. Berberich, 168 Neb. 142, 95 N. W. 2d 325 (1959).

The alleged invalidity of the lease to Ohmart rested mainly on the assertion that the tract lay within a known geologic structure. Under such circumstance the law required competitive bidding. See 30 U. S. C., §§ 226(b), 351, and 352 (1970). Dennis and Banner unsuccessfully litigated the validity of the lease in intermediate administrative proceedings within the Department of the Interior. They failed to perfect an appeal to the Secretary of the Interior who dismissed the appeal on February 28, 1966. See 43 C. F. R., § 1840.0-7 and former 43 C. F. R., § 1844.3.

The United States presses claim preclusion on the validity of its lease. The law is not settled, especially when an administrative body made the first decision. The preclusive effect of an administrative decision depends upon many factors. It is important that the fact-finding process of the administrative body approximate that of a court, that the body observe fair standards of

evidence, that the facts be adjudicative, and that the process not deprive a party of his right to a jury trial. Those criteria are not exclusive, but they assist us in outlining the applicability of preclusion. See, 2 Davis, Administrative Law, §§ 18.01, 18.03, 18.08, and 18.12, pp. 545 to 547, 557 to 568, 597 to 605, and 625 to 628 (1958); Vestal, Res Judicata/Preclusion, V-223 to V-225 (1969). The administrative decision against Dennis and Banner precluded them from challenging the validity of the lease in this proceeding. See, generally, Henriques, "The Impact of Recent Decisions and Administrative Procedures of the Department of the Interior on Oil and Gas Leasing by the Bureau of Land Management," 14 Rocky Mt. Min. L. Inst. 33 (1968).

The claim preclusion asserted by Dennis and Banner grew out of a prior application by Ohmart to pool these interests. The commission on March 17, 1964, ordered compulsory pooling effective April 10, 1964. Dennis and Banner appealed to district court. The United States under Title 28 U. S. C., § 2410 (1969), moved to dismiss the Department of the Interior for lack of jurisdiction over the person and the subject matter. The Secretary of the Interior had not determined that such pooling would be in the public interest. Dennis and Banner then moved for summary judgment. The district court on August 8, 1966, found that neither it nor the commission had acquired jurisdiction over the United States. It accordingly dismissed Ohmart's application and vacated the order of the commission. The brief of counsel for the United States offers no clue to the reason for the position of the Secretary of the Interior, and we discover none in inspecting an unnecessarily voluminous record.

Congress possesses power to dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States. United States Constitution, Art. IV, § 3, para. 2. The police power of the State extends over federal lands in the ab-

sence of a preempting federal interest. See Texas Oil & Gas Corp. v. Philipps Petroleum Co., 277 F. Supp., 366 (D. C., W. D. Okla., 1967), affirmed, 406 F. 2d 1303 (10th Cir., 1969). State law applies to leasehold interests like that of Ohmart under the Mineral Leasing Act for Acquired Lands where no important threat to any identifiable federal policy or interest appears. See Wallis v. Pan American Petroleum Corp., 384 U. S. 63, 86 S. Ct. 1301, 16 L. Ed. 2d 369 (1966).

Much language in the federal statutes tends to point to the absence of any federal control in the presence of a conservation act like that of Nebraska. Without specifying the signs we conclude that a favorable determination by the Secretary of the Interior is essential to inclusion of federal lands with non-federal lands in a state pooling order. See, Title 30, U. S. C., §§ 226(j), 351 to 359 (1971); Texas Oil & Gas Corp. v. Phillips Petroleum Co., *supra;* cf. Wallis v. Pan American Petroleum Corp., *supra.* It follows that the judgment of the district court in the first proceeding did not preclude the United States or Ohmart from applying for the pooling order under review.

The district court ordered the pooling respecting production retroactive to June 5, 1963. It reserved for later hearing, however, issues concerning costs of drilling completion and of operating wells, and allocation of operating, drilling, and completion expenses.

The Legislature has empowered the Oil and Gas Conservation Commission to suspend the operation of the conservation act to federal lands in certain situations. The power is subject to the requirement that conservation and prevention of waste be accomplished. See § 57-920, R. R. S. 1943. The definition of waste embraces abuse of a correlative right resulting in an owner in the pool producing more than his just and equitable share of the oil from the pool. § 57-903(1) (c), R. R. S. 1943. See, also, § 57-909, R. R. S. 1943. The opposition of the United States in the prior proceeding confounds us, for

even a temporary national policy against pooling seems doubtful.

Assuming an analogy to a carried-owner's share of cost, we see an arguable advantage to the United States and Ohmart in the delay, although pooling is ordinarily a low-risk enterprise. The advantage may be lessened, perhaps offset, by allowance of a cost item for risk of capital. See, §§ 57-910.03(5) (c) and 57-910.10, R. R. S. 1943; Smith, "The Kansas Unitization Statute; Part II," 17 Kan. L. Rev. 133, 145 (1968); Meyers and Williams, "Petroleum Conservation in Ohio," 26 Ohio St. L. J. 591, 622 (1965). A review of the fairness of an order relating to shares of production but not costs is difficult. Notwithstanding strong doubts on the equity of retro-activity, we affirm the judgment of the district court.

AFFIRMED.

CLINTON, J., dissenting in part.

For the reasons set forth in my dissenting opinion in Farmers Irr. Dist. v. Schumacher, 187 Neb. 825, 194 N. W. 2d 788, I dissent from that part of the opinion approving the retroactivity of the commission order and the complete disregard of the statutory requirement of the establishment of a spacing unit prior to pooling and the disregard of the necessity of compliance with commission Rule 338 requiring notice and hearing to establish a spacing unit.

NEWTON, J., dissenting.

I respectfully dissent. Under the criteria laid down in Farmers Irr. Dist. v. Schumacher, 187 Neb. 825, 194 N. W. 2d 788, the Oil and Gas Conservation Commission order should not be retroactive. Appellees voluntarily withdrew from the first proceedings instituted to obtain a pooling order. They should not now be permitted recovery of oil produced prior to the institution of the second proceeding now on appeal to this court.